In the Matter of the Estate of MILTON DeLANO, Deceased.

Surrogate's Court, Madison County, July 9, 1931.

*D. F. Wallace,* for the executors.

*Coley & Kiley,* for Harry DeLano and Alene D. Warner, legatees.

*W. W. Wilcox,* for State Superintendent of Banks.

Devitt, District Attorney and Acting Surrogate. Milton DeLano of Canastota, N. Y., died on the 2d day of January, 1922, leaving a last will and testament and codicil which was probated in this court on the 23d day of January, 1922. By the terms of the will, Mr. DeLano gave a life annuity to his sister, Elizabeth Saltsman, of $400 annually and made this a charge upon his real estate. The balance of his estate was given to his four children in the proportion of one-seventh to one son, and two-sevenths to each of the other children. The will appointed his two sons, Kirk B. DeLano and James B. DeLano, executors. The executors duly qualified as such and are still acting. Mrs. Saltsman, the life beneficiary, is now dead and the executors have prepared their final account of their proceedings as such executors and have asked for a final decree of judicial settlement. This account was filed in the surrogate's office on April 6, 1931.

It appears from the account that this estate holds 156 shares of the capital stock of the State Bank of Canastota which was originally appraised at the sum of $125 per share, but which has now no market value.

On April 27, 1931, there was filed in the surrogate's office a claim made by Joseph A. Broderick, Superintendent of Banks of the State of New York, in charge of the State Bank of Canastota for the purpose of liquidation, of a 100 per cent stockholder's

assessment on 156 shares of the capital stock of the State Bank of Canastota owned by said estate, amounting to the sum of $15,600.

There is attached to this claim an affidavit made by Milton L. Masson, Special Deputy Superintendent of Banks, to the effect that the known liabilities of the State Bank amount to $991,697; that the total assets amount to $894,231.89, and that there is a deficit of $97,466.10; that there are 600 shares of stock outstanding of the State Bank of Canastota, of the par value of $100 each, and that it will be necessary to make a 100 per cent stockholders' assessment on all outstanding shares of stock.

The account of the executors, as filed in Schedule B, lists under expenses of administration, an item as follows: " Paid State Bank $8,000.00." Harry C. DeLano and Alene D. Warner, two of the legatees under the will of Milton DeLano, deceased, on April 27, 1931, filed objections to the allowance of the said sum of $8,000 paid to said bank on the ground that said item was not properly entered as an expense of administration, nor as a debt; but was in truth a loan made by such executors to the State Bank of Canastota. And they further objected to the account as filed, in that Schedule G is incorrect in that in setting out a statement of assets remaining in the hands of the executors they failed to contain an item of indebtedness of the State Bank of Canastota to the executors in the sum of $8,000, claiming that the said item is a proper charge against the State Bank of Canastota, and is due to said estate.

It appears that Hon. Albert E. Campbell, surrogate of the county of Madison, is also vice-president of the State Bank of Canastota, and, therefore, on March 9, 1931, a certificate was made by Judge Campbell to the effect that it would be improper for him to act as surrogate in relation to this claim, and pursuant thereto a certificate was made by the clerk of the Surrogate's Court, showing that the said surrogate was disqualified and the matter was sent to the district attorney as acting surrogate for hearing and determination.

It appears from the evidence that Kirk B. DeLano and James B. DeLano, the executors of this estate, were officers of the State Bank of Canastota, the said Kirk B. DeLano being president and the said James B. DeLano being cashier of said bank, and also secretary of the board of directors. The other directors were Albert E. Campbell, vice-president, F. T. Benjamin, H. S. Gleason, R. C. Bowman, John H. Roberts and Willis Huyck.

It appears from the evidence that in the early part of the year 1930, George W. Egbert, Deputy Superintendent of Banks, had a conference in Syracuse with the officers and directors of the State Bank in which it appeared that he called their attention to the fact that the affairs of the State Bank of Canastota were not in a

satisfactory condition and at that time he asked for a contribution of $15,000 to strengthen the condition of the institution. It appears that no definite action on that matter was taken at that time. It appears that there was some correspondence and considerable negotiations between the State Banking Department and the president of the State Bank in regard to a contribution of $15,000 to " sweeten " the affairs of the bank, as it was expressed by Mr. Egbert. It appears that there was an understanding arrived at between Kirk B. DeLano, president of the State Bank, and Mr. Egbert, that the sum of $15,000 would be contributed to the bank; the estate of Milton DeLano to make a contribution of $8,000 and the balance of $7,000 to be made by the directors. This appears from a letter (Exhibit 1) from Mr. Egbert, dated February 28, 1930. On March 15, 1930, the State Banking Department wrote to the State Bank of Canastota (Exhibit 3), calling the bank's attention to an examination in which the Banking Department objected to the book surplus as shown by the bank of $88,247.43 and showing that the surplus as allowed by the examiner was only $11,697.55. This letter also shows that there was a liability on the part of the directors to the bank of $105,126, which amount was excessive, and calling the bank's attention to the fact that diligent efforts must be made to correct this situation, particularly as to the officers' loans. This letter further states that the situation is not satisfactory; that the Banking Department had requested, and the officers had agreed, that $15,000 in cash be contributed to the institution, $8,000 of which apparently had been contributed by the estate of Milton DeLano and the remaining sum of $7,000 was to be paid by the directors on or before March twentieth. It appears by Exhibit 9 that on March 5, 1930, the bank received from the estate of Milton DeLano the sum of $8,000, which was deposited in a " Suspense Account." On March thirteenth the suspense account was debited with the sum of $8,000 and the bond account was credited with the sum of $8,000 (Exhibits 9, 10 and 11). It appears that no note or any other evidence of this payment of $8,000 was given to the Milton DeLano estate.

At a special meeting of the board of directors of the State Bank, held March 21, 1930, at which the vice-president, Albert E. Campbell, presided (Exhibit 7), the following appears from the minutes: " The matter of directors' contributions was referred to and it was the concensus of opinion that they write the Banking Department as to whether they would be satisfied with a total contribution of $13,000 to be contributed as follows: $8,000 by the Estate of Milton DeLano (already contributed), $1,000 each by the following

directors: John H. Roberts, Albert E. Campbell, F. T. Benjamin, H. S. Gleason and R. C. Bowman.

" At the close of the discussion a motion was made by John H. Roberts, seconded by R. C. Bowman, that the following directors each contribute $1,000.00: J. H. Roberts, Albert E. Campbell, F. T. Benjamin, H. S. Gleason and R. C. Bowman. Carried unanimously."

On April seventeenth the Banking Department wrote a letter to Kirk B. DeLano, president of the State Bank (Exhibit 4), in which the Banking Department says: " Referring to yours of the 26th inst., we enclose herewith an agreement (Exhibit B) regarding the contribution of $13,000 to your institution. We assume that by this time, in addition to the $8,000.00 contributed by the estate, $5,000.00 has been paid into your institution." The letter contains the following statement: " You will understand that the amount placed in the institution at this time, from a protection standpoint, is to be an absolute gift. You can naturally see that if the monies contributed were not a contribution, they would, therefore, be a liability to the institution which, of course, would not help and correct the situation that we have in mind." It appears from the evidence that the contribution asked for and voted by the directors on March 21, 1930, was never made, and that the agreement sent by the Banking Department was never signed nor executed by any one; that the only contribution or payment made was by the Milton DeLano estate, which was made on March 5, 1930, and was entered on the books of the bank as " Suspense Account." The State Bank was closed by the State Banking Department on December 18, 1930, and Milton L. Masson, Special Deputy Superintendent of Banks, was placed in charge.

It is very clear from the evidence that the State Banking Department, early in February, 1930, was aware of the fact that the State Bank of Canastota was not in a satisfactory condition. This matter was brought to the attention of the directors on or about February 11, 1930, by Mr. Egbert, Deputy Superintendent of Banks, and yet it appears that nothing was actually done by the State Banking Department or any one of the directors to correct the situation and save the depositors of the bank from loss, except that the Milton DeLano estate placed in the bank the sum of $8,000, as above noted. Therefore, it seems that all of the officers and directors of the bank, as well as the State Banking Department, were grossly negligent and remiss in their duties to the stockholders and depositors. It does not appear that the condition of the bank was brought to the attention of any of the individual stockholders outside of the directors.

There is some evidence in this case, particularly the evidence of Mrs. Warner and the directors Roberts, Gleason and Campbell, that the money paid in was to be considered as a loan. If this is true, then the bank owes the money to the DeLano estate and it could be recovered under the decision of *Andrews* v. *Cosmopolitan Bank* (183 App. Div. 787).

The payment of $8,000 into the bank by the executors of the estate of Milton DeLano, deceased, was made by the executors without any authority, unless it was made as a loan. Executors have no right to make a gift of the estate's funds. (*Dickinson* v. *Colonial Trust Co.*, 33 Misc. 668; *Powers* v. *Powers*, 48 How. Pr. 389.) If it was made as a loan to the bank, the executors should have taken some security for the loan. As no security or other evidence of debt was taken, if the amount is not recovered, the executors must be surcharged with this amount.

The money of the Milton DeLano estate being in the hands of the executors as a trust fund, the said sum of $8,000 can be recovered from the State Bank of Canastota, as it was paid in with full knowledge by the officers of the State Bank of Canastota and the State Banking Department that the money was held in trust. (See opinion by Judge Ruger in the case of *Deobold* v. *Oppermann*, 111 N. Y. 531, at p. 538, and cases there cited. See, also, *Moore* v. *American Loan & Trust Co.*, 115 id. 65; *Matter of Post*, 30 Misc. 551.)

It is evident that the directors had no clear understanding as to the effect of the payment to be made by them, some stating that they believed the amount should be a loan and others stating that the amount, if paid by the directors, would be an absolute gift. The proposed agreement, which was never executed (Exhibit B), refers to the matter as a *contribution*. The resolution of the board of directors (Exhibit 7) provides that each of the directors named should *contribute* $1,000. According to Webster's New International Dictionary, the word " contribute " means to give or grant in common with others. A " contribution " is defined as " payment by each of several jointly liable of his individual share in a loss suffered."

The evidence of Kirk B. DeLano, James B. DeLano and of the various directors, in so far as they covered the subject, indicate that this $8,000 was intended as a contribution to the bank to bolster up the situation, and was not considered as a regular deposit.

I find, as a matter of fact, after considering all the evidence, that the executors of the Milton DeLano estate intended the $8,000 as a contribution; and did not expect to get the money back; and I hold as a matter of law that the executors had no authority to

make a donation or contribution to the bank, and, therefore, the Milton DeLano estate has a right to recover the sum of $8,000 from the bank, or from the executors. The evidence clearly shows that Mr. Egbert, Deputy Superintendent of Banks, had full knowledge that the $8,000 was contributed by the DeLano estate. The contribution by the DeLano estate was the only contribution made and was made at the request of the State Banking Department. The State Banking Law, sections 56 and 121, provides the manner in which an assessment on bank stock may be made. This method was not followed by the State Banking Department, and, therefore, I think that the payment of $8,000 is absolutely null and void so far as a contribution to the State Bank is concerned; particularly in view of the fact that no other contribution was made, although the directors passed a resolution that each of five directors should make a contribution of $1,000.

Now, a proper assessment of 100 per cent on the capital stock appears to have been made by the State Banking Department pursuant to statute, and I do not think the DeLano estate should be penalized for making a voluntary contribution at the request of the Superintendent of Banks in March, 1930. It was held in the case of *Mosler Safe Deposit Company* v. *Guardian Trust Company* (208 N. Y. 524) that stockholders who had paid an assessment upon the call of the Superintendent of Banks were entitled to offset the same against their stockholders' liability.

I, therefore, hold that the sum of $8,000 should be credited on the stock assessment of $15,600 represented by the claim filed by Joseph A. Broderick, Superintendent of Banks of the State of New York, in charge of the State Bank of Canastota, N. Y., for purposes of liquidation, and that the said claim should be allowed at the sum of $7,600.

A final decree of judicial settlement allowing this claim at $7,600 may be prepared in accordance with this decision.